FENWICK

902 Broadway
18th Floor
New York, NY 10010-6035

212.430.2600
Fenwick.com

Noah Solowiejczyk
NSolowiejczyk@fenwick.com

November 11, 2026

**VIA ECF AND ELECTRONIC MAIL**

The Honorable Katherine Polk Failla
U.S. District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *United States v. Stamp and Plank*, 26 Cr. 316 (KPF)

Dear Judge Failla:

We write on behalf of Defendants Michael Stamp and Marcus Plank to supplement their pending motion to suppress. (ECF No. 28). The Government finally produced materials it deemed responsive to the search warrants for the Defendants' Google and iCloud accounts and mobile devices on October 16, 2026, and yet more on October 23 and October 29, 2026.

The belated productions make clear that the Government's responsiveness review bore little relation to the defined responsive categories. The Government broadly seized vast quantities of plainly non-responsive records, in violation of the Fourth Amendment. The Government's flagrant disregard for the warrants, and corresponding lack of good faith, is clear from what it marked responsive, which includes the Defendants' *entire* web and search history regardless of relevance, numerous documents and communications that fall *outside* the warrants' temporal limitation, and the bulk seizure of *all* messages between Plank and his wife over a period of many months. The Court should suppress any evidence derived from the Government's execution of the warrants.

The evidence obtained from the Google and iCloud warrants should also be suppressed because the Government's review, which lasted more than 19 months, exceeded the outer limits of any reasonable period. That delay is especially unreasonable given the Government's cursory and haphazard search procedures. Bulk tagging large swaths of documents as responsive, as the Government appears to have done here, did not require 19 months.

Lastly, the final production of "responsive" material from Stamp's mobile device on October 29, 2026 (the "October 29 Production") must be suppressed for two additional reasons. First, it appears the Government had concluded its responsiveness review before October 29 but then attempted to re-open it *after* it received additional information from Volkswagen. This is prohibited. Once the responsiveness review was completed, any evidence seized thereafter must be suppressed. Second, the Government identified a high volume of records as "responsive" in flagrant disregard for the warrant, seizing many plainly non-responsive files.

At a minimum, given the seizure of large quantities of plainly non-responsive records, the Court should hold an evidentiary hearing on the Government's responsiveness review.

**BACKGROUND**

The Government obtained warrants for the Defendants' iCloud and Google accounts on March 14, 2025 (the "Google/iCloud Warrants"). On March 4, 2026, relying largely on materials obtained from those warrants, the Government obtained search warrants authorizing the search of the Defendants' residences and persons, and the seizure and forensic examination of the electronic devices found there (the "Mobile Device Warrants"). The Government executed those warrants on or about March 5, 2026, seizing two mobile devices from each Defendant.

The Government obtained an Indictment on July 23, 2026. At the August 4, 2026, arraignment, the Government represented that it expected to complete its review of materials responsive to the Google/iCloud Warrants and the Mobile Device Warrants within 45 days. (November Declaration of Noah Solowiejczyk ("Nov. 11 Decl."), Ex. A). On August 24, 2026, the Government produced the entirety of the Defendants' Google accounts, iCloud accounts, and mobile devices.[1] The responsive production, however, was not forthcoming. On September 24, 2026, defense counsel asked the Government to "let us know a date by which the Government expects to complete the search warrant responsiveness review," noting that the defense needed the responsive take as soon as possible to decide "the bases for its suppression motion." (Nov. 11 Decl., Ex. B). The Government did not respond, but the parties spoke by phone on September 29, 2026. After that call, on September 29, 2026, defense counsel again asked when the Government would complete its responsiveness review. (Nov. 11 Decl., Ex. C).

During a call on September 30, 2026 with counsel for both defendants, the Government said it expected to produce responsive material the week of October 5. (Nov. 11 Decl., ¶ 7). No responsive records were produced that week. On October 14, 2026, undersigned counsel again followed up, noting that the Government's promised deadlines had passed and "reiterating [Defendants'] request to receive all material deemed responsive to the search warrants as soon as possible." (Nov. 11 Decl., Ex. D). The defense further noted: "[i]f the Government is open to turning over what it has deemed responsive to date, with the final remnants to come soon thereafter, we would be amenable to that proposal assuming that completion of the responsiveness review is imminent." (*Id.*). That same day, the Government responded that "[w]e are currently in the process of packaging responsive sets for production, and we will get them to you as soon as possible. Please let us know if you would like to discuss further." (*Id.*). The Government did not indicate that its production would be piecemeal or that this was simply a first tranche.

On October 16, 2026, the Government produced responsive material from the Defendants' four mobile devices and from Plank's iCloud account. On October 20, 2026, the Government wrote that "[w]e have a few more items from the phones that we will be following shortly, as well as the

[1] Plank's iCloud account was produced. Stamp's iCloud account only consisted of approximately 11 files. Stamp's company-issued mobile device was produced on or about September 4, 2026, after first being subjected to a privilege review by Volkswagen.

responsive materials from the Google returns, which will be a Relativity load file. We expect to conclude the responsiveness review soon." (Nov. 11 Decl. Ex. E).

The Government's October 20 email did not mention that, one day earlier, on October 19, 2026, [redacted] The defense believes the responsiveness review of the mobile devices was actually complete as of the October 16 production, but that the Government decided to re-open that review to seize as responsive additional messages with [redacted] As discussed below, if that is what happened, the records seized after the responsiveness review was complete must be suppressed in their entirety.

On October 23, 2026, the Government produced records seized as responsive to the search of the Google accounts of Stamp and Plank. On October 29, 2026, defense counsel acknowledged receipt of the October 23 production and sought confirmation that "the responsiveness review is complete and that the Government is not expecting to produce any additional responsive materials." (Nov. 11 Decl., Ex. F). But the Government responded that same day that its review was still not done: "[y]ou'll be receiving some additional responsive materials today, and that should complete the responsiveness review." (*Id.*). It then produced additional messages from Stamp's personal mobile device[2], which consisted entirely of messages between Stamp and [redacted]

## ARGUMENT

### I. <u>**The Government Seized Vast Quantities of Irrelevant Records in Flagrant Disregard of the Warrant's Terms**</u>

The Fourth Amendment demands that "searches deemed necessary should be as limited as possible" to prevent the "specific evil" of "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[E]ven when a search is conducted pursuant to a valid search warrant, police officers must still execute the warrant in good faith and within the confines of the limitations contained in the search warrant." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 426 (S.D.N.Y. 2013) (citing *Walter v. United States*, 447 U.S. 649, 656 (1980)). "A proper execution of a search warrant for numerous documents requires three things: adequate preparation; obedience to area limitations; and restrictions on seizure of items not mentioned particularly in the warrant." *United States v. Heldt*, 668 F.2d 1238, 1261 (D.C. Cir. 1981) (per curiam). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

---

[2] While Stamp's work device was subjected to a privilege review by Volkswagen's counsel, there was no such procedure for Stamp's personal device to defense counsel's knowledge. Thus, the Government cannot point to that privilege screen as a basis for its delay in providing these messages.

Electronically stored information is particularly sensitive: it "can give the government possession of a vast trove of personal information about the person to whom the [information] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure," and "the potential for privacy violations occasioned by an unbridled, exploratory search … is enormous." *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017).

When the government "flagrantly disregard[s]" the terms of a warrant, "wholesale suppression" is required. *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000); *see also United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). "The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search." *Shi Yan Liu*, 239 F.3d at 141. "Government agents 'flagrantly disregard' the terms of a warrant so that wholesale suppression is required [] when (1) they effect a 'widespread seizure of items that were not within the scope of the warrant,' and (2) do not act in good faith." *Id.* at 140 (internal citations omitted).

Here, the records the Government produced as purportedly "responsive" make clear that it flagrantly disregarded the terms of the warrant. As to the Defendants' Google accounts, despite reviewing them for approximately 19 months,[3] the Government made little effort to comply with the warrant's terms. It haphazardly marked as "responsive" substantial volumes of records that have nothing to do with the subject offenses, many of which reflect the Defendants' personal activity and bear no relation whatsoever to the warrant categories. First and foremost, the Government seized as responsive the *entirety* of the Defendants' web and search history for 15 months, sweeping in thousands upon thousands of personal website visits and Google searches wholly unrelated to the subject offenses or the warrant categories.[4] This web activity across Stamp and Plank's accounts totals more than 16,000 pages, over 80% of the records marked responsive from the Defendants' Google returns. The vast majority of those pages fall entirely outside the warrant categories and reflect innocuous and, at times, highly personal activity, including searches and website visits regarding sensitive medical issues, upcoming vacation plans, Taylor Swift, restaurants, Game of Thrones, and scores and scores of other innocuous topics.

Rather than seizing only the web and search history that fell within the warrant categories, the Government effected a wholesale seizure. The Google/iCloud Warrants permitted nothing of the sort. Seizing the entirety of the Defendants' web activity for 15 months—including personal and private information—bears all the hallmarks of the "indiscriminate rummaging" prohibited by the Fourth Amendment. *See United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). The plain terms of the warrants did not permit agents to seize the entire online lives of Stamp and Plank.

[3] The Government obtained the search warrant of the Google and iCloud accounts on March 14, 2025, and did not produce records it deemed responsive from those accounts until over 19 months later (October 23, 2026 for both Defendants' Google accounts and October 16 for Plank's iCloud account).

[4] Although the web activity consists of a single .html file, the Government easily could have limited the seizure to the search and web history actually responsive to the warrants. For example, it could have printed the file to PDF and tagged as responsive only those pages that contained searches or website visits within the warrant categories—a simple, well-established solution.

This amounted to a general search that has "long been deemed to violate fundamental rights." *Marron v. United States*, 275 U.S. 192, 195 (1927). Those executing the Google warrant did not act in good faith when they seized this vast trove of records without regard to whether they fit within the warrant's well-defined categories. *See Matias*, 836 F.2d at 747 ("A search must be confined to the terms and limitations of the warrant authorizing it.").

The searches of the Defendants' mobile devices and Plank's iCloud account likewise flagrantly disregarded the warrants and suffered from two fundamental defects. First, as to certain mobile devices, the search ignored the January 1, 2024-to-present temporal limitation in both the Google/iCloud Warrants and the Mobile Device Warrants. The Government seized as "responsive" approximately 100 files, nearly 75 of which were chat message chains, from Plank's mobile device dating from 2023. And it seized approximately 100 files, over 75 of which were chat message chains, from Stamp's mobile device dating from 2023. Basic measures would easily have filtered out these messages and files, yet the Government did not even bother, evincing its flagrant disregard for the warrant's terms and lack of good faith. The temporal limitation is particularly important here. [redacted] Yet the Government appears to have made little to no effort to comply with that limitation, tagging scores of messages predating January 1, 2024.

Second, the Government seized wholesale wide swaths of plainly irrelevant messages—at bottom, because it bulk marked messages as responsive without even reviewing their contents. That failure to consider whether individual messages bore any relation to the warrant categories further demonstrates the Government's flagrant disregard for the warrants' terms.

With respect to Plank's devices and iCloud account, the Government bulk seized as "responsive" all messages between Plank and his wife over nearly 15 months, comprising marital communications across more than 350 individual days[5] in all. The Government did not apply search terms. It did not conduct any analysis whatsoever. It instead bulk coded as "responsive" all messages between husband and wife – many of which were highly personal and sensitive in nature – without regard for the warrant categories or the marital privilege. [redacted]

[5] Each file generally consisted of a 24-hour period of messages in UTC.

[6] Marital communications are "presumptively confidential." *Blau v. United States*, 340 U.S. 332, 333 (1951); *see also United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019). It is the Government's burden to defeat that presumption. *See United States v. Taylor*, 92 F. 3d 1313, 1332 (2d Cir. 1996). To read the warrants to authorize the wholesale seizure of *all* communications between husband and wife would be a shocking intrusion into Plank's privacy and the marital privilege, [redacted] Nor is the marital privilege limited to trial evidence; numerous courts have recognized the privilege applies to grand jury subpoenas and search warrants. *See United States v. Irons*, 646 F. Supp. 2d 927, 958 (E.D. Tenn. 2009) (recommending recorded telephone conversations and voicemails between defendant and his wife be suppressed as confidential marital communications); *Blau*, 340 U.S. at 333–34 (enforcing the privilege in the context of grand jury

[redacted] A measured search using search terms and other techniques to seize only communications within the warrant categories would have been appropriate. The Government did the exact opposite. This deep intrusion into Plank's private life is exactly what the Fourth Amendment guards against.

Beyond these issues, the Government swept up other plainly non-responsive messages and files on innocuous topics from the iCloud account and mobile devices, further suggesting that its responsiveness review flagrantly disregarded the warrants. For example, as to Plank's iCloud account, the Government seized as responsive over 3,000 image files (jpgs), many of which appear wholly irrelevant and personal in nature (such as photos of children). Many of these images do not appear to be attached to relevant message chains.

## II. The Court Should Suppress the Evidence Seized from the Google and iCloud Accounts Due to the Unreasonable Length of the Responsiveness Review

The Government's extended delay in completing its responsiveness review of the Google and iCloud accounts warrants suppression of all evidence derived from those warrants.

Given the unique characteristics of electronically stored information, Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure permits a warrant to authorize the government first to seize or copy such information in bulk, and then "later review … [the] information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B); *see also United States v. Metter*, 860 F. Supp. 2d 205, 214 (E.D.N.Y. 2012).

That later review, however, must include a review of the search warrant returns for responsiveness. *See Wey*, 256 F. Supp. 3d at 383; *Metter*, 860 F. Supp. 2d at 215. That is, the government must separate the data responsive to the warrant from the data that is not. *See United States v. Debbi*, 244 F. Supp. 2d 235, 237–38 (S.D.N.Y. 2003); *Metter*, 860 F. Supp. 2d at 215.

"Although 'there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence falls within the scope of a warrant,' courts have recognized that 'the Fourth Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a "reasonable" period of time.'" *Wey*, 256 F. Supp. 3d at 383 (quoting *Metter*, 860 F. Supp. 2d at 215); *see also United States v. Lustyik*, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014) ("Like all activities governed by the Fourth Amendment, the execution of a search

proceedings); *SEC v. Lavin*, 111 F.3d 921, 934–35 (D.C. Cir. 1997) (enforcing the privilege in the context of contesting a subpoena); *see also United States v. Sanson*, No. 4:25-cr-00090-YGR (N.D. Cal. Oct. 14, 2026), ECF No. 66 (denying Government's motion to have presumptive access to confidential marital communications contained in mobile device and iCloud search warrant returns and noting that the marital privilege applied in non-trial settings).

[7] Copies of the relevant search warrants were previously included as Exhibits J and K to the October 2, 2026 Declaration of Noah Solowiejczyk in support of the Defendants' pre-trial motions (ECF No. 30) and are, accordingly, not re-included as exhibits to this supplemental letter motion.

warrant must be reasonable," and "[l]aw enforcement officers therefore must execute a search warrant"—including, when applicable, review of recovered electronic communications—"within a reasonable time."); *cf. Lauro v. Charles*, 219 F.3d 202, 209 (2d Cir. 2000) ("[T]he Fourth Amendment's proscription of unreasonable searches and seizures 'not only … prevent[s] searches and seizures that would be unreasonable if conducted at all, but also … ensure[s] reasonableness in the manner and scope of searches and seizures that are carried out." (ellipses in original) (quoting *Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994))).

Here, the Government obtained the Google and iCloud Warrants on March 14, 2025, and did not produce records it deemed responsive from those accounts until October 2026—over 19 months later. That delay was unreasonable under the circumstances and is particularly egregious given the lack of care the Government ultimately took in executing the warrant. The Government did not require 19 months to bulk seize the entirety of the Defendants' web and search history. For the emails in Stamp's Google accounts, the Government tagged only 314 files, all of which appear to be in English—belying any notion that the lengthy review was somehow necessitated by German translation. Indeed, as to emails, the Government appears simply to have marked as responsive approximately 300 emails relating to Stamp's Robinhood account, with the remainder consisting of messages relating to Rivian. The Government did not require 19 months for such a basic review, nor did it require 19 months to deem responsive every single website visit and web search over a 15-month period. The same goes for Plank's iCloud account. The Government did not spend 19 months painstakingly reviewing the return and translating it from German. Instead, it did very little and then, belatedly, bulk seized as responsive a vast swath of messages between husband and wife.

Simply put, under these circumstances the 19-month review period for the Google and iCloud accounts was unreasonable. *See Metter*, 860 F. Supp. 2d at 212 (finding that "the government's more than fifteen-month delay in reviewing the seized electronic evidence" for responsiveness "constitute[d] an unreasonable seizure under the Fourth Amendment" that warranted blanket suppression); *cf. Debbi*, 244 F. Supp. 2d at 237–38 (finding a Fourth Amendment violation where the government seized documents and "pick[ed] over them for months thereafter without determining which were actually evidence of the alleged crimes").

## III. **<u>The October 29 Production of Additional Evidence Subsequently Seized From Stamp's Mobile Device Should Be Suppressed for Additional Reasons</u>**

The October 29 Production from Stamp's mobile device—which consisted of approximately 80 message chains with [redacted] and their attachments (save for one call log file)—should be suppressed for two additional reasons.

First, the October 29 Production contains a high proportion of non-responsive messages – based on the defense's review, nearly one-third of the production consists of records that do not appear to fit any warrant category. This is due in part to the same defects that plagued the responsiveness review described above. The Government bulk coded as responsive nearly every[8]

[8] The exceptions were a handful of communications where Stamp reacted to the individual's Instagram stories and a single deleted message with no content.

message chain between Stamp and another individual that [redacted] over a period lasting more than 18 months. Many of the messages were innocuous and bore no relation to any warrant category. Of course, the mere fact that [redacted] did not justify treating every message between Stamp and that individual as responsive without regard to its content or its relation to the warrant categories. This is especially true for messages sent well before and after the June 2024 announcement date, which were nevertheless tagged responsive—including a July 26, 2023 message with the individual that just states "Juhuuuu," a November 10, 2024 message indicating that this individual left the WhatsApp chat, and an April 2025 message containing only a laughing emoji. The October 29 Production also contains approximately 10 files from 2023 that are outside the temporal limitation.

Second, the defense believes that the October 29 Production should also be suppressed because the search of Stamp's mobile device was likely conducted *after* the Government had already completed its responsiveness review of this device. As detailed above, the Government produced responsive material from this device and all the other mobile devices, on October 16, 2026, without indicating that its review of the device was ongoing or that the production was merely a first tranche. But then, on October 19, the Government received [redacted] The Government then appears to have recommenced its review of Stamp's device, identified communications with [redacted] and seized many of those messages in bulk. Nor does the Government's October 20 email—stating that "[w]e have a few more items from the phones that we will be following shortly"—suggest that its review of Stamp's device was still ongoing as of October 16. That email was sent the day after [redacted], and the only device materials the Government produced thereafter were Stamp's messages with [redacted]. The more plausible inference is that the October 20 email reflected the re-opened review itself, not a review that had been ongoing all along.

If the defense is correct about this sequence of events, the evidence in the October 29 Production seized from Stamp's device after October 16 must be suppressed. Once the Government completed its responsiveness review, it was not entitled to go back into the device and conduct new searches based on information it first learned from [redacted]. Rather, "[d]ocuments not identified as responsive at the conclusion of this review 'f[e]ll with[out] the scope of the warrant[s]' and thus were not seized pursuant to them." *United States v. Nejad*, 436 F. Supp. 3d 707, 736 (S.D.N.Y. 2020) (quoting Fed. R. Crim. P. 41 Advisory Committee's Note (2009)). The law is clear that records seized after the responsiveness review is complete must be suppressed in their entirety. *Id.* at 736 ("Because these searches were conducted following the conclusion of the responsiveness review—and thus the execution of the warrants—they exceeded the scope of the warrants' authority. Accordingly, documents first identified as responsive during these searches were seized outside the scope of the search warrants.").

Here, the parties' course of dealing and the Government's October 16 production strongly suggest that the Government had concluded the responsiveness review of the mobile devices as of that production. That the Government later produced only records from Stamp's device relating to [redacted], and nothing further from any other device, further suggests that its review of all the devices was complete as of October 16.

## IV. The Court Should, at a Minimum, Order an Evidentiary Hearing

Using the Government's own responsive productions, the defense has put forward substantial evidence that the Government's searches flagrantly disregarded the warrants that authorized them. At a minimum, the Court should order a hearing at which those involved in the Government's responsiveness review are made to explain that process and its timing. That hearing will permit the Court to rule on the defense's motion with the benefit of the full factual record.

A hearing is necessary here because, when the Government's responsiveness review is at issue, the defense faces an information asymmetry as to the review's internal workings. Indeed, mere weeks ago, Judge Castel held a hearing on precisely these issues. *United States v. Chu*, 1:25-cr-00579-PKC (S.D.N.Y. Sept. 28, 2026), ECF No. 171. This was not an outlier; other courts have ordered hearings under similar circumstances. *See also United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (ordering hearing to determine "how law enforcement agents executed Pinto-Thomaz iPhone search warrant."); *Debbi*, 244 F. Supp. 2d at 238 (ordering evidentiary hearing "at which counsel and the Court would have the opportunity to review the pertinent records, question the executing agents, and the like."). Nor should the Court accept the Government's unsworn representations about its review process and timing. *See Pinto-Thomaz*, 352 F. Supp. 3d at 309 n.11 ("In its opposition to defendants' motions for suppression, the Government makes a number of representations as to how law enforcement agents conducted the searches incompliance [sic] with warrant terms. However, these representations are made unaccompanied by any sworn affidavits by the agents concerned. Accordingly, the Court is unable to consider them as evidence.").

The necessity of a hearing is underscored by *Chu*. While the Court has yet to rule on the pending motion to suppress, the three-day hearing before Judge Castel last month raised serious issues with the responsiveness review that appear to closely resemble the fundamental defects here. Per the defendant's post-hearing submission, those issues included that the Government employed no uniform responsiveness review process; that certain agents did not review the substance of chats at all, marking entire chats as responsive whenever they hit on a keyword; and that the Government marked as responsive tens of thousands of messages between Chu and his wife. *Chu*, ECF No. 185 at 1-2. At a minimum, the Court should hold a hearing here to determine what led to the Government's overbroad seizure of large quantities of plainly non-responsive material. The Defendants believe a hearing will only make clearer that the Government's searches of the Google accounts, iCloud accounts, and mobile devices flagrantly disregarded the relevant warrants and that wholesale suppression is required.

Respectfully submitted,

FENWICK & WEST LLP

*/s/ Noah Solowiejczyk*
Noah Solowiejczyk

*Counsel to Michael Stamp*

LANKLER SIFFERT & WOHL LLP

*/s/ Michael Longyear*
Michael Longyear

*Counsel to Marcus Plank*

cc: AUSAs Shiva Logarajah and Daniel Nessim (via ECF and e-mail)